UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELIK POGHOSYAN,<br><br>    Plaintiff,<br><br>    v.<br><br>FIRST FINANCIAL ASSET MANAGEMENT, INC., d/b/a as FFAM in California; and DOES 1 through 10, inclusive,<br><br>    Defendants. | No. 1:19-cv-01205-DAD-SAB<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND<br><br>(Doc. No. 4) |

This matter is before the court on defendant First Financial Asset Management, Inc.'s ("FFAM") motion to dismiss. On November 5, 2019, the motion came before the court for hearing. Attorney Meghan George appeared telephonically on behalf of plaintiff, and attorney James Christopher Magid appeared telephonically on behalf of defendant. The court has considered the parties' arguments and, for the reasons set forth below, will grant the motion to dismiss.

**BACKGROUND**

Plaintiff Melik Poghosyan originally filed this action in the Fresno County Superior Court on May 3, 2019. (Doc. No. 1-1, Ex. A at 7–16, Compl.) He later filed a First Amended Complaint on August 1, 2019, asserting: (1) a California Unfair Competition Law ("UCL")

claim; (2) a California False Advertising Law ("FAL") claim; (3) a California Consumer Legal Remedies Act ("CLRA") claim; (4) fraud; (5) a California Rosenthal Fair Debt Collection Practices Act ("RFDCPA") claim; and (6) a federal Fair Debt Collection Practices Act ("FDCPA") claim. (Doc. No. 1-1, Ex. A at 65–72, First Am. Compl. ("FAC").)

According to the FAC, plaintiff received a debt collection notice for $803.00 (the "Debt") from defendant in January 2010. (*Id.* at ¶ 6.) Within a month, plaintiff settled the Debt, which was related to damage to a rental car he had rented, for $603.00 (the "Settlement"). (*Id.*) However, when plaintiff attempted to rent a car in July 2018 from Enterprise, a car rental agency, he was denied and "referred back" to defendant. (*Id.* at ¶ 7.) After plaintiff contacted defendant, defendant allegedly confirmed that the Debt had been settled but nonetheless refused to notify any third parties of the Settlement. (*Id.* at ¶¶ 7, 9.) Rather, defendant allegedly informed plaintiff that he would have to pay the $203.00 in dispute (the "Disputed Debt") before it would notify Enterprise that the Debt had been settled. (*Id.*)

On September 3, 2019, defendant removed this case to this federal court on the basis of federal question jurisdiction. (Doc. No. 1.) Defendant then filed the pending motion to dismiss on September 10, 2019. (Doc. No. 4.) Plaintiff filed his opposition to the motion on October 2, 2019 (Doc. No. 7), and defendant filed its reply on October 8, 2019. (Doc. No. 11.)

**LEGAL STANDARDS**

**A.     Motion to Dismiss**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A complaint alleging fraud, as does the plaintiff's, must satisfy heightened pleading requirements. *See* Fed. R. Civ. P. Rule 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.") "Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word fraud is not used)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks omitted). The "circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of its particular misconduct . . . so they can defend against the charge and not just deny that they have done anything wrong." *Kearns*, 567 F.3d at 1124 (internal quotation marks omitted) (citing *Bly-Magee*, 236 F.3d at 1019). To satisfy the particularity standard of Rule 9(b), the plaintiff "must set forth *more* than the neutral facts necessary to identify the transaction" at issue. *Id.* (internal quotation marks and citations omitted); *see also Vess*, 317 F.3d at 1106 ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged.") (internal quotation marks omitted).

/////

1 "When an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) (citing *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

## LEGAL ANALYSIS

Defendant argues that plaintiff's complaint must be dismissed because: 1) he has failed to allege facts demonstrating an economic injury and therefore lacks standing to assert claims under the UCL; 2) he does not plead sufficient facts to state a cognizable claim under any of his causes of action; and 3) his fraud, RFDCPA, and FDCPA claims are time-barred.

**A.     Voluntary Dismissal of Plaintiff's FAL and CLRA Claims**

Plaintiff has agreed to dismissal of his FAL and CLRA claims without prejudice and seeks leave to amend. (Doc. No. 7 at 9.) Defendant does not oppose dismissal with respect to the FAL claim but argues that the CLRA claim should be dismissed with prejudice because it only applies to "'consumers' who have engaged in a 'transaction' for 'goods' or 'services,'" not to debt collection. (Doc. No. 11 at 3.)

1.     <u>The CLRA Applies to This Instance of Debt Collection</u>

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices" in relation to "a transaction intended to result or that results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770(a). Goods are defined as "tangible chattels bought or leased for use primarily for personal, family, or household purposes"; services as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods"; and consumer as "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." *Id.* at § 1761. The CLRA also provides that it shall be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." *Id.* at § 1760.

/////

Although the California Supreme Court has not yet addressed whether the CLRA applies to certain types of financial transactions such as debt collection, *see, e.g.*, *Underwood v. Future Income Payments, LLC*, No. SACV171570DOCDFMX, 2018 WL 4964333, at *12 (C.D. Cal. Apr. 26, 2018) (discussing this in relation to lump sum loans that were repaid using borrowers' pensions); *Rex v. Chase Home Fin. LLC*, 905 F. Supp. 2d 1111, 1156 (C.D. Cal. 2012) (noting the same with regards to mortgage loans and the activities involved in receiving and maintaining them), this court must apply "California law as we believe the California Supreme Court would apply it." *In re KF Dairies, Inc. & Affiliates*, 224 F.3d 922, 924 (9th Cir. 2000).

Defendant urges the court to find that debt collection is neither a good nor a service under the CLRA, citing the decisions in *Fairbanks v. Superior Court*, 46 Cal. 4th 56 (2009) and *Berry v. American Express Publ'g, Inc.*, 147 Cal. App. 4th 224 (2007). In *Fairbanks*, the California Supreme Court declared that life insurance policies are not services as defined by the CLRA, and that ancillary services provided by life insurance providers do not bring such policies within the CLRA's coverage. 46 Cal. 4th at 61, 65. In *Berry*, a California Court of Appeal decided that "credit transactions separate and apart from any sale or lease of goods or services" are not covered by the CLRA. 147 Cal. App. 4th at 233.

However, neither of these decisions precludes the possibility that debt collection—especially of debt related to a good or service—falls under the purview of the CLRA. Here, the collection of debt that plaintiff incurred in connection to a car rental (i.e. the short-term "lease" of a "tangible" "good" for "personal . . . purposes") is distinguishable from insurance and credit cards.[1] *Cf. Fairbanks*, 46 Cal. 4th at 61, 65 (noting that life insurance policies are "not work or

---

[1] Some courts have extended *Fairbanks*' logic to mortgage loans and mortgage loan servicing. *See, e.g.*, *Alborzian v. JPMorgan Chase Bank, N.A.*, 235 Cal. App. 4th 29, 33, 40 (2015) ("*Fairbanks* applies with equal force to [mortgage] lenders."); *Jamison v. Bank of Am., N.A.*, 194 F. Supp. 3d 1022, 1032 (E.D. Cal. 2016) (agreeing with *Alborzian* and applying *Fairbanks* to mortgage services). However, the California Supreme Court has not affirmed this extension of law. Moreover, the holding in *Fairbanks* was premised on unambiguous statutory language—at least with regards to insurance—and legislative history that indicated that the California Legislature intended to omit insurance from the CLRA's definition of services. *Fairbanks*, 46 Cal. 4th at 61–62. Neither rationale applies here. The court therefore declines to preemptively cabin a statute that, by design, is to be construed and applied liberally. *See* Cal. Civ. Code § 1760.

labor, nor is it related to the sale or repair of any tangible chattel"); *Berry*, 147 Cal. App. 4th at 223 (holding that "the issuance of a credit card [even one with an annual fee] was not 'a transaction intended to result or which results in the sale or lease of goods or services to [a] consumer'").

Moreover, plaintiff alleges that FFAM refused to notify Enterprise, the car rental agency that plaintiff had been trying to rent a car from, that his Debt had been settled unless he paid the Disputed Debt. It is reasonable to infer at this stage of the litigation that FFAM intended to leverage plaintiff's desire to rent a car to coerce him into paying the Disputed Debt; such a transaction could be viewed as one that is either indirectly "intended to result," or incidentally "results in the sale or lease of goods or services[.]" Cal. Civ. Code § 1770(a).

Keeping in mind the CLRA's statutory command that it shall be "liberally construed and applied" to promote its purpose of protecting consumers against unfair and deceptive business practices, California Civil Code § 1760, the court concludes that the CRLA applies to the instance of debt collection at issue in this case. *See Hernandez v. Hilltop Fin. Mortg., Inc.*, 622 F. Supp. 2d 842, 849 (N.D. Cal. 2007) ("In similar matters involving financial transactions, the California Supreme Court and intermediate appellate divisions have found the CLRA applicable.") (listing cases involving individual retirement accounts, automobile loans, and mortgage financing services). Dismissal with prejudice is therefore inappropriate; plaintiff's FAL and CLRA claims will instead be dismissed with leave to amend.

**2.      Plaintiff's Fraud Claim**

Defendant next argues that plaintiff's fraud claim must fail because it: 1) is time-barred; and 2) fails to plead sufficient facts to state a claim. (Doc. No. 4 at 14–15.)

    1.  <u>The Statute of Limitations Does Not Bar Plaintiff's Fraud Claim</u>

California law starts the clock on fraud's three-year statute of limitations when the plaintiff discovers the facts constituting the fraud or mistake. *See* Cal. Civ. Proc. Code § 338; *Meadows v. Bicrodyne Corp.*, 785 F.2d 670, 672 (9th Cir. 1986) ("This circuit has held that the three years do not begin to run until plaintiff discovers the facts constituting the violation or in the

/////

exercise of reasonable diligence should have discovered them.") (internal quotation marks and citations omitted).

Defendant argues that here the statute of limitations started to accrue on the date on which plaintiff settled the Debt, sometime in January or February 2010. (Doc. No. 4 at 14–15.) Plaintiff counters that he only discovered that the Settlement was fraudulent in July 2018, "at the time that Defendant acknowledged the settlement, but still attempted to collect on an uncollectable debt[.]" (Doc. No. 7 at 10) (emphasis omitted). Plaintiff's contention appears to implicitly invoke the discovery rule or, alternatively, the principle of fraudulent concealment. The California Supreme Court has described the discovery rule as follows:

> [T]he plaintiff discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof—when, simply put, he at least suspects . . . that someone has done something wrong to him, "wrong" being used, not in any technical sense, but rather in accordance with its "lay understanding." He has reason to discover the cause of action when he has reason at least to suspect a factual basis for its elements. He has reason to suspect when he has notice or information of circumstances to put a reasonable person on inquiry; he need not know the specific "facts" necessary to establish the cause of action; rather, he may seek to learn such facts through the process contemplated by pretrial discovery; but, within the applicable limitations period, he must indeed seek to learn the facts necessary to bring the cause of action in the first place—he cannot wait for them "to find" him and "sit on" his "rights"; he must go find them himself if he can and file suit if he does.

*Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397–98 (1999); *see also Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1054 (9th Cir. 2008) (internal quotation marks and citations omitted) (applying the discovery rule to fraud claims). Similarly:

> A close cousin of the discovery rule is the well accepted principle of fraudulent concealment. The rule of fraudulent concealment is applicable whenever the defendant intentionally prevents the plaintiff from instituting suit[.] In order to establish fraudulent concealment, the complaint must show: (1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry. In urging lack of means of obtaining knowledge, it must be shown that in the exercise of reasonable diligence the facts could not have been discovered at an earlier date.

*Platt Elec. Supply*, 522 F.3d at 1055 (internal quotation marks and citations omitted) (applying

the principle of fraudulent concealment to fraud claims).

According to the FAC, defendant effectively concealed its refusal to confirm the existence of the Settlement to third parties and its surreptitious desire to collect on the settled Debt by confirming *only to plaintiff* that the Debt had been settled. (FAC at ¶ 7.) Plaintiff thus had no reason to suspect that defendant would refuse to report the Settlement to third parties. It was only when plaintiff attempted to rent a vehicle from Enterprise that he learned that defendant had not reported the Settlement to Enterprise. (*Id.* at 7–11.) Defendant provides no explanation as to how plaintiff could have discovered this alleged deception any earlier through the exercise of due diligence. (*Id.*) On these alleged set of facts, the court concludes that the statute of limitations was tolled by both the discovery rule and the principle of fraudulent concealment such that plaintiff's fraud claim did not start to run until July 2018. The statute of limitations therefore does not bar plaintiff's fraud claim.

2. <u>Plaintiff's Fraud Claim Fails to Meet Rule 9(b)'s Pleading Standards</u>

Nonetheless, plaintiff's fraud claims must meet the heightened pleading standards required by Rule 9(b) of the Federal Rules of Civil Procedure. *Kearns*, 567 F.3d at 1125 (holding that Rule 9(b)'s pleading standards apply to state law fraud claims being litigated in federal court). "To properly plead fraud with particularity under Rule 9(b), 'a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" *Scott v. Bluegreen Vacations Corp.*, No. 1:18-cv-649-AWI-EPG, 2018 WL 6111664, at *5 (E.D. Cal. Nov. 21, 2018) (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018)).

Here, the allegations of plaintiff's complaint fail to meet that standard. Although plaintiff has alleged that FFAM is responsible for the alleged fraud, plaintiff has not identified the FFAM employee(s) who perpetuated the fraud.[2] Plaintiff also has not identified where the alleged fraud

---

[2] One judge of this court has aptly observed as follows:

> A number of California federal courts cite to *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 157 (1991) for the proposition that, in a fraud action against a corporation, a plaintiff <u>must</u> "allege the names of the persons who made the

8

took place, nor has he explained how the events he has described in his complaint amounts to a fraud. While plaintiff alleges that he settled his debt with defendant, he does not describe with sufficient specificity the terms of the Settlement or how defendant "intentionally and recklessly misled" him. (FAC at ¶ 49.) He also does not specify whether defendant communicated with any third parties about the Debt and, if so, what defendant told them about the status of that Debt. Without these key factual allegations, plaintiff cannot sustain his fraud claim. Accordingly, that claim will be dismissed with leave to amend.

### 3. Plaintiff's RFDCPA and FDCPA Claims

Plaintiff also alleges that defendants used "unfair and unconscionable means to collect or attempt to collect a debt," "knowingly submitt[ed] false or inaccurate [information]," and "willfully conceal[ed] adverse information bearing upon a person's credit[worthiness], credit standing, or credit capacity." (FAC at ¶ 25(c)–(d).) Defendant argues that plaintiff's RFDCPA and FDCPA claims should be dismissed because: 1) they are partially time-barred; and 2) plaintiff does not allege facts that demonstrate any violation of the RFDCPA or FDCPA. (Doc. No. 4 at 15–17.)

/////

---

allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *See Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1198 (N.D. Cal. 2016); *Tapia v. Davol, Inc.*, 116 F. Supp. 3d 1149, 1163 (S.D. Cal. 2015); *Meixner v. Wells Fargo Bank, N.A.*, 101 F. Supp. 3d 938, 956 (E.D. Cal. 2015); *Delarosa v. Boiron, Inc.*, 818 F. Supp. 2d 1177, 1191 (C.D. Cal. 2011). This Court questions the reliance on this specific provision of *Tarmann* as properly interpreting Rule 9(b), since *Tarmann* is a state court decision regarding California state procedure. *See Boring v. Nationstar Mortg., LLC*, 2014 WL 5473118, at *5 (E.D. Cal. Oct. 28, 2014) ("In an action pending in federal court, 'the Federal Rules of Civil Procedure apply . . . irrespective of whether the substantive law at issue is state or federal.'" (quoting *Vess*, 317 F.3d at 1102)). While *Tarmann's* level of detail may be important against a corporation to satisfy Rule 9(b), this should be considered under the circumstances of each case, not as a hard-and-fast rule of federal procedure.

*Scott*, 2018 WL 6111664, at *5. The undersigned agrees with this view of *Tarmann's* impact on the assessment of whether Rule 9(b)'s pleading requirements have been met.

1.     The Statutes of Limitations Do Not Bar Plaintiff's RFDCPA and FDCPA Claims

Plaintiff's RFDCPA and FDCPA claims are subject to a one-year statute of limitations. *See* Cal. Civ. Code § 1788.30(f) (providing "one year from the date of the occurrence of the [RFDCPA] violation" to sue); 15 U.S.C. § 1692k(d) (permitting FDCPA actions "within one year from the date on which the violation occurs"). Defendant argues that because the Debt was settled in January 2010 and plaintiff did not sue until May 2019, any claims based on events that occurred prior to May 2018 are time-barred. (Doc. No. 4 at 15–16.) Plaintiff acknowledges the applicable statute of limitations but argues that the "conduct that [he] alleges is a violation of the debt collection laws is Defendant's subsequent ***attempts to collect on a debt that is uncollectable by virtue of the fact that the debt had been settled***," which occurred in July 2018, less than one year before the filing of this suit. (Doc. No. 7 at 5–6) (emphasis in original); (FAC at ¶ 7.) The court concludes that plaintiff's claims are not time-barred to the extent they are based on defendant's attempts to collect on the Debt after May 2018.

2.     Plaintiff's RFDCPA and FDCPA Claims Fail to Meet Rule 9(b)'s Pleading Standards

Next, defendant argues that plaintiff has not sufficiently alleged a violation of the RFDCPA or FDCPA. (Doc. No. 4 at 16.) According to defendant, plaintiff has not alleged that "FFAM continued collection attempts on the Debt after reaching Settlement" and has not alleged facts demonstrating that FFAM "misrepresented the character, amount, or legal status of the Debt . . . provided false representations or deceptive means to collect or attempted to collect the debt . . . informed others that Plaintiff continued to owe a Debt to FFAM . . . [or] ever informed him that settling his . . . Debt would allow him to rent a car from Enterprise in the future[.]" (*Id.* at 16–17.) Plaintiff points out that in the FAC he alleges that "Defendant was explicitly continuing collection attempts on the debt that it had settled nearly 8 years earlier" and that "Defendant was refusing to notify any third parties . . . that Plaintiff's debt had been settled with Defendant nearly 8 years prior." (FAC at ¶¶ 8–9.) In response, defendant argues that plaintiff's claims, even if true, still must fail because: 1) plaintiff acknowledged that defendant had "confirmed the settlement" in his FAC; and 2) merely seeking "voluntary repayment of a time-

barred" debt is not a violation of the FDCPA.³  (Doc. No. 11 at 4–5.)

As a preliminary matter, the court notes that plaintiff's RFDCPA and FDCPA claims are subject to Rule 9(b)'s heightened pleading standards because the conduct that serves as the basis of plaintiff's RFDCPA and FDCPA claims is also the basis of his fraud claims and so "sound in fraud." *See Kearns*, 567 F.3d at 1125 ("A plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of that claim.  In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b).").  Because of that, plaintiff's RFDCPA and FDCPA claims fail for the same reasons that his fraud claim fails:  the allegations of the FAC in support of those claims lack the specificity required by Rule 9(b).  They do not identify with whom at FFAM plaintiff interacted, what they or FFAM promised, where the alleged conduct happened, what was agreed to as part of the Settlement, how defendant's conduct amounts to a violation of the FRDCPA and FDCPA, and whether defendant communicated anything to Enterprise or any other third parties.  Simply put, plaintiff's vague and generalized allegations make it difficult for the court to ascertain whether plaintiff may allege an actionable FRDCPA or FDCPA claim.  Therefore, those claims will be dismissed with leave to amend.

**4.      Plaintiff's UCL Claim**

1.      <u>Plaintiff Has Established Standing to Sue Under the UCL</u>

To establish standing to sue under the UCL, a party must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal.

---

³ Although the court need not reach these issues for the reasons noted below, it notes that:  1) the fact that defendant allegedly informed plaintiff that the Debt had been settled does not mean that defendant did not nevertheless try to illegally collect on a settled debt or misrepresent the status of that debt to third parties; 2) defendant cites no binding authority for the proposition that seeking "voluntary repayment of a time-barred" debt is permissible; and 3) even if such a proposition were to be true, it would not apply here because plaintiff alleges in the FAC that defendant attempted to condition disclosure of the Settlement to third parties on payment of the Disputed Debt.  (*See* Compl.)

11

4th 310, 322 (2011). This requirement was imposed by California voters in 2004 and it was designed to prevent suits from people who had not actually "'used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant[.]'" *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 228 (2006) (quoting Prop. 64, § 1, subd. (b)(1)–(4)).

> There are innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary.

*Kwikset Corp.*, 51 Cal. 4th at 323; *see also Hall v. Time Inc.*, 158 Cal. App. 4th 847, 854 (2008), *as modified* (Jan. 28, 2008) (listing various types of economic injury). However, the court must also be mindful that:

> While the economic injury requirement is qualitatively more restrictive than federal injury in fact, embracing as it does fewer kinds of injuries, nothing in the text of Proposition 64 or its supporting arguments suggests the requirement was intended to be quantitatively more difficult to satisfy. Rather, we may infer from the text of Proposition 64 that the quantum of lost money or property necessary to show standing is only so much as would suffice to establish injury in fact; if more were needed, the drafters could and would have so specified. *Cf.* Prop. 64, § 1, subd. (e) ("It is the intent of the California voters in enacting this act to prohibit private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact under the standing requirements of the United States Constitution.") In turn, federal courts have reiterated that injury in fact is not a substantial or insurmountable hurdle; as then Judge Alito put it: "Injury-in-fact is not Mount Everest." *Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 294 (3d Cir. 2005). Rather, it suffices for federal standing purposes to "'allege[] some specific, 'identifiable trifle' of injury.'"

*Kwikset Corp*, 51 Cal. 4th at 324.

Defendant argues that plaintiff's allegations that he was denied a rental car from a non-party to this case and suffered "actual damages" due to emotional distress, are not economic injuries. (Doc. No. 4 at 9; *see also* FAC at ¶¶ 6–11, 26.) Plaintiff contends that he alleged in his FAC that he was "caused to incur additional damages," denied the opportunity to rent a car,

12

"deprived of money," and is at risk of "suffering unknown damages into the future." (FAC at ¶¶ 6–11, Doc. No. 7 at 4–5.)

However, the risk of suffering speculative, unknown damages in the future is insufficient to support a UCL claim. *See JaM Cellars, Inc. v. Vintage Wine Estates, Inc.*, No. 17-01133-CRB, 2017 WL 2535864, at *4 (N.D. Cal. June 12, 2017) ("A UCL plaintiff must allege that it has suffered injury in fact, and not just possible future injury."); Cal. Bus. & Prof. Code § 17204 ("Actions for relief pursuant to this chapter shall be prosecuted . . . by a person who *has suffered* injury in fact and *has lost* money or property as a result of the unfair competition.") (emphasis added). In addition, plaintiff's inability to rent a car from Enterprise does not comport with the way the California Supreme Court has defined economic injury. *See Kwikset*, 51 Cal. 4th at 323 (listing various categories of economic injury, none of which include an inability to enter into a transaction).

The court can, however, infer at least one instance of economic injury: the $603.00 that plaintiff paid in the Settlement, an agreement that plaintiff now believes to be unfair, fraudulent, or an unlawful business practice. (FAC at ¶ 6.) Although defendant contends that the $603.00 Settlement represents a "net benefit" to plaintiff because it is less than the $803.00 Debt originally owed by plaintiff, this does not obviate the fact that plaintiff might have abstained from entering that Settlement had he known that defendant would refuse to notify third parties that the Debt had been settled. *See Kwikset Corp.*, 51 Cal. 4th at 323 (holding that plaintiffs have standing under the UCL when they allege that unfair competition caused them to "enter into a transaction, costing money or property, that would otherwise have been unnecessary"). The court concludes that plaintiff has therefore plead sufficient facts to establish standing under the UCL.

    2.    <u>Plaintiff Does Not State a Viable UCL Claim</u>

Under the UCL, an act of unfair competition includes "any unlawful, unfair or fraudulent business act or practice," and California courts recognize each of these three prongs as separate and distinct theories of liability. *See* Cal. Bus. & Prof. Code § 17200; *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007) (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles*

/////

*Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)).  Although plaintiff alleges a UCL claim under all three prongs, defendant argues that each of plaintiff's theories of liability is fatally flawed.

"A 'business act or practice' is 'unlawful' under the unfair competition law if it violates a rule contained in some other state or federal statute."  *Sandoz Inc. v. Amgen Inc.*, ___ U.S. ___, 137 S. Ct. 1664, 1673 (2017) (citing *Rose v. Bank of America, N. A.*, 57 Cal. 4th 390, 396 (2013)).  In effect, the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable. . . . [V]irtually any state, federal or local law can serve as the predicate for an action" under the UCL.  *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012) (citations and internal quotation marks omitted).  However, plaintiff's theory of liability under the "unlawful" prong fails here because he has not viably alleged a violation of any other laws, as noted above.  Until he cures this defect, plaintiff cannot sustain a claim under the "unlawful" prong of the UCL.

To advance a theory of fraud under the UCL, a plaintiff must allege facts showing that reasonable members of the public are likely to be deceived by the allegedly fraudulent conduct.  *See Davis*, 691 F.3d at 1169.  Such a claim is subject to Rule 9(b)'s particularity requirements, *see In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 990 (N.D. Cal. 2016) ("Claims stated under the fraud prong of the UCL are subject to the particularity requirements of Federal Rule of Civil Procedure 9(b)."), and must include "an account of the time, place, and specific content of the false representations" being alleged.  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation marks omitted).  According to defendant, plaintiff's theory of fraud fails because it does not allege any facts "demonstrating that 'members of the general public' are likely to be deceived, given that Plaintiff's allegations are limited to his own private negotiations regarding the Settlement."  (Doc. No. 4 at 11.)  Plaintiff, in response, reiterates his conclusory allegation that defendant's "representations were part of a common scheme to mislead consumers[.]"  (Doc. No. 7 at 9.)  Plaintiff, however, does not allege any facts that would support such a theory.

Similar deficiencies plague plaintiff's theory of liability under the "unfair" prong of the UCL.  Courts in the Ninth Circuit have recognized that there are at least three separate tests to

determine if conduct is "unfair" under the UCL.  *See Davis*, 691 F.3d at 1170–71; *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d at 989–90; *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1137 (N.D. Cal. 2014).  In this case, both parties adopt the test that examines whether the alleged conduct violates public policy or is "tethered to specific constitutional, statutory, or regulatory provisions." (Doc. Nos. 4 at 11; 7 at 8.)  But because plaintiff has not viably alleged a violation of any constitutional, statutory, or regulatory provisions, he cannot proceed under the "unfair" prong of the UCL.  Accordingly, plaintiff's UCL claim will also be dismissed with leave to amend.

## CONCLUSION

For the reasons discussed above:

1. Defendant's motion to dismiss (Doc. No. 4) is granted with leave to amend; and
2. Any amended complaint shall be filed within thirty (30) days of service of this order.

IT IS SO ORDERED.

Dated: **January 27, 2020**

UNITED STATES DISTRICT JUDGE